LEMMON, Judge.
Mrs. Gladys Young sued the manufacturer of Swan, a liquid dishwashing detergent, and the manufacturer’s insurer for damages because of skin irritation allegedly caused by her use of the product. The district court dismissed her suit after a trial on the merits.
The pivotal issue on appeal is whether Mrs. Young proved that her condition resulted from the use of Swan.
Mrs. Young first used Swan in October, 1968. In previous years she had used another liquid dishwashing detergent (not manufactured by Lever Brothers) and had never previously experienced any type of irritation or allergy»
She testified that a week or two after she started using Swan, her fingers began to itch around the nails. When her nails began to recede within two or three months, Mrs. Young reflected upon the cause and theorized that the change to Swan could have been responsible for the condition. She then discontinued its use.
At some time not revealed by the record, Mrs. Young upon a druggist’s recommendation treated the fingers with a patent medicine, which proved ineffective. The druggist did not testify and thus did not identify the medicine or describe the condition of Mrs. Young’s hands. Upon his recommendation, however, Mrs. Young began to use rubber gloves for dishwashing.
On July 2, 1969 she consulted a general practitioner, who found a rough, furrowed appearance of the fingernails of the first two right fingers and the first four left fingers. He diagnosed onychosis, a fungus infection, and prescribed an anti-fungal drug, although he did not perform any clinical or laboratory tests for the presence of fungi. He predicted that she would experience a good recovery after a long course of treatment.
Because fungal infection is caused by an organism and not by soap, the doctor in his testimony expressed doubt as to the relationship of Mrs. Young’s condition to the use of Swan. He admitted, however, that fungi can attack an existing irritation, and that after the fungal infection is cured, the effects of the original irritation could still be present.
Apparently Mrs. Young neither recovered nor sought further medical attention until January 20, 1970, when a dermatologist examined her at defendants’ request. This doctor found that these six fingernails were thickened and discolored and exhibited ridging, grooving and irregular surfaces. His tests for allergy to Swan proved negative. He did not test for fungus, but stated that fungi usually attack weakened tissues and that one treatment for fungus infection is to keep the area dry. He diagnosed Mrs. Young’s condition as chronic paronychiae, which is inflammation of the paronychial tissue surrounding the nail.
*324 Since the doctor had examined Mrs. Young primarily to rule in or to rule out an allergy to' Swan, he was disinclined at trial to state a cause for her condition, but testified that chronic paronychiae is often associated with immersing hands in water for considerable periods of time. He listed other causes of the condition as contact with certain chemicals or numerous types of detergents.
The doctor also stated that a detergent at full strength may be a primary irritant (a substance which produces irritation to the skin of all persons to whom the substance is applied), but is not a primary irritant in the manner used by Mrs. Young.
On May 4, 1970 Mrs. Young consulted another dermatologist, who found no evidence of fungus upon performing a microscopic examination and laboratory cultures on scrapings from the fingers concerned. He also found no changes in the skin or nails which suggested an allergy. He did find, however, longitudinal and horizontal grooving of the nails, with a thickness of the keratin layer which pushed up the ends of the nails, and abnormal dryness and scaly, thickened skin beneath the ends of her fingernails and at the tips of her fingers. He diagnosed onychodistrophy (a disturbance in the growth of the fingernails) secondary to the irritation of the skin by detergents, although he testified that the irritation itself was then over.
The doctor administered cortisone, treated the nails with ultra-violet light, prescribed the application of cortisone liquid, and recommended the use of cotton gloves in conjunction with the rubber gloves she had been using. When he again examined her ten months later on the day before trial, every nail except one had completely returned to normal and that nail was 90% healed.
This doctor testified that onychodistro-phy can be caused by a number of other things, such as gasoline, paint, a direct blow, or systemic diseases. While he could not rule out these other possible causes, he observed that the particular fingers affected were characteristic of the pattern which occurs in right-handed housewives who suffer detergent irritation. Systemic diseases, for example, affect all fingernails and not just those which are used most in washing dishes. The doctor further stated that onychodistrophy results from a drying-process, which can be caused by many soaps and detergents.
The fact that skin irritation resulted from use of a detergent is the type of fact ordinarily proved by circumstantial evidence. For example, when a person experiences skin irritation upon using a detergent for the first time, with no other change in living or working patterns, and shortly thereafter consults a medical officer, who after obtaining a complete history and performing a thorough examination determines no other probable cause of the irritation, then there is a strong inference that the irritation resulted from the use of the detergent.
In the present case, however, there was no medical or lay testimony as to the condition of Mrs. Young’s fingers and nails during the three months that she used Swan. Moreover, she did not seek medical attention until six months after she had discontinued using this detergent and nine months after the condition had appeared. When she finally sought medical attention, the first doctor who examined her attributed the cause of her condition to an organism rather than to a soap product.
The only medical witness who in any way expressed the probability of a connection between the use of Swan and the skin irritation was the dermatologist who first examined Mrs. Young 17 months after she stopped using Swan, at which time the irritation itself was over and only the dry, scaly, thickened skin' resulting from the irritation was observable. This dermatologist’s testimony that the fingers affected were the same ones characteristically irritated by the use of numerous types of dish-washing detergents was the strongest evi *325 dence (other than Mrs. Young’s testimony) inferring that Swan caused the irritation.
We view the entirety of the evidence as proving at most that Mrs. Young suffered a skin irritation and that detergents can cause this type of skin irritation. The evidence is insufficient to preponderate in favor of a conclusion that her use of Swan caused the skin irritation that she suffered.
The judgment is affirmed.
Affirmed.